**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | **CRIMINAL NO. 16-167** |
| ) | |
| **MICHAEL J. RUFFATTO** ) | |

### SENTENCING MEMORANDUM

Plaintiff United States of America, through its counsel, Soo C. Song, Acting United States Attorney for the Western District of Pennsylvania, and Mary McKeen Houghton, Assistant United States Attorney for the Western District of Pennsylvania, respectfully submits to the Court this Sentencing Memorandum.

### I. INTRODUCTION

On October 21, 2016, Michael Ruffatto entered a guilty plea to the one-count Information at Criminal Number 16-167 pursuant to the terms of a Plea Agreement between Michael Ruffatto and the United States. The Information charges the defendant with knowingly presenting to the National Energy Technology Laboratory, an agency of the United States Department of Energy, a claim against the United States for payment, which the defendant knew to be false, fictitious and fraudulent in violation of 18 U.S.C. §§ 287 and 2. Pursuant to the terms of the Plea Agreement, the defendant agreed that as relevant conduct, the defendant also knowingly presented to the United States Department of Energy, eleven additional claims against the United States for payment, well knowing that each claim was false, fictitious and fraudulent.

In the Plea Agreement, Michael Ruffatto and the United States agreed that pursuant to Section 2B1.1(b) of the Sentencing Guidelines, the loss is $5,719,281.92 and that the defendant's

1

total offense level is 21. The parties also agreed that no downward departures apply under Part K of the Sentencing Guidelines. Pursuant to the terms of the Plea Agreement, the parties reserved each of their respective rights to argue for a variance from the applicable Sentencing Guidelines range.

An offense level of 21 results in a Sentencing Guidelines range of 37-46 months incarceration. For the reasons provided below, the government recommends a sentence of incarceration within the Sentencing Guidelines range of 37-46 months. A sentence within the Sentencing Guidelines range of 37-46 months incarceration is sufficient but not greater than necessary to fulfill the sentencing goals outlined in 18 U.S.C. § 3553(a).

## II. FACTUAL BACKGROUND

On December 8, 2009, the National Energy Technology Laboratory, which has offices in the Western District of Pennsylvania, awarded a multi-million-dollar Cooperative Agreement for a carbon site characterization project to North American Power Group Ltd. (NAPG), a business headquartered in Greenwood Village, Colorado.

Michael Ruffatto, an attorney and graduate of Stanford University, owned and controlled NAPG. The purpose of the agreement was to study the carbon sequestration potential of an 880-acre site in Campbell County, Wyoming. The agreement, which was part of the American Recovery and Reinvestment Act, required NAPG to drill three shallow characterization wells and one deep characterization well. These wells were essential to the study as they would be used to determine the suitability of storage of carbon dioxide.

The agreement provided that the Department of Energy reimburse NAPG for actual work performed and allowable expenses actually incurred. In order to receive reimbursement monies from the Department of Energy, the Cooperative Agreement required NAPG to submit

truthful and accurate requests for reimbursement to the Department of Energy, detailing the work performed on the project and the costs incurred.

During the period from November 12, 2010 through October 13, 2011, NAPG, at Michael Ruffatto's direction and knowledge, submitted twelve fraudulent requests for reimbursement to the Department of Energy. These submissions falsely represented that work performed and costs incurred on the project totaled over $5,719,000.00, when, in fact, no such work and costs had been expended on the project, as the Defendant well knew.

In reliance on these fraudulent requests for reimbursement, the Department of Energy paid over $5,719,000.00 in award monies to the defendant's corporation, NAPG. Contrary to the false and fraudulent claims, millions of dollars of award monies were not used on the project, but were secretly transferred by Michael Ruffatto into his personal bank account and used for expenses not covered under his agreement with the Department of Energy, including the defendant's personal expenses. In order to transfer the monies, Michael Ruffatto filtered millions of dollars through a wholly owned subsidiary controlled by him, North American Land and Livestock, LLC (NALL), while falsely representing to the Department of Energy that the subsidiary was doing work on the project, when, in fact, as the defendant well knew, NALL performed no work on the project.

The fraudulent requests for reimbursement submitted to the Department of Energy by NAPG, at Michael Ruffatto's direction and knowledge, included phony invoices of NALL, allegedly documenting hundreds of thousands of dollars of work performed by NALL on the project. To the contrary, throughout the time period from November 12, 2010 through October 13, 2011, and in order to conceal and disguise the fraud, the defendant emailed and sent correspondence to the Department of Energy containing false statements as to the purported

work on the project. Contrary to the defendant's representations, no characterization wells were drilled.

In response to the Department of Energy's requests for additional back up documents regarding Michael Ruffatto's representations of work performed on the project, NAPG, at Michael Ruffatto direction and knowledge, submitted to the Department of Energy, in December 2011 and again in March 2012, hundreds of fraudulent backup documents allegedly evidencing millions of dollars of work performed on the project, by contactors, well specialists and engineers when, as the defendant well knew, no such work was performed on the project.

Millions of dollars the government's award monies were never used on the project, but were spent and dissipated by the defendant on expenses totally unrelated to the project, including payments for the defendant's residence in Englewood Colorado, payments for the defendant's Mercedes Benz, payments for personal purchases at Niemen Marcus, payments for carpeting worth thousands of dollars, payments for expensive jewelry and payments for the defendant's international travel.

## III. THIRD CIRCUIT SENTENCING PRECEDENT

The Third Circuit has set forth a three-step process that district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) District courts must continue to calculate a defendant's Sentencing Guidelines range precisely as they would have before *Booker*.

(2) In doing so, district courts must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Sentencing Guidelines calculation, and take into account the Third Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, district courts are to exercise their discretion by considering the relevant factors under 18 U.S.C. § 3553(a) in setting the sentence they impose regardless whether it varies from the sentence calculated under the Sentencing Guidelines. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006)); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006)). *See also United States v. Smalley*, 517 F.3d 208, 211-12 (3d Cir. 2008) (stating that the *Gunter* directive is consistent with later Supreme Court decisions).

In calculating the guideline range, district courts must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (*en banc*). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008).

At the third step of the sentencing process, district courts must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *Cooper*, 437 F.3d at 329. *See also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006).

The government explains below its view of the proper consideration in this case of the advisory Sentencing Guidelines range and the Section 3553(a) factors, which supports a sentence of incarceration within the range of 37-46 months.

## IV. GUIDELINES CALCULATION

In the Plea Agreement, Michael Ruffatto and the United States stipulated that for purposes of Section 3B1.1(b) of the Sentencing Guidelines, the loss for guideline sentencing purposes is $5,719,281.92, which includes the conduct charged in the Information and all relevant conduct. The parties agreed that under Section 2B1.1(a)(2) of the Sentencing Guidelines, the base offense level is 6 and that the base offense level of 6 should be increased by 18 levels under Section 2B1.1(b)(1) since the loss is greater than $3,500,000.00. Michael Ruffatto and the United States also agreed that the offense level should be lowered by a total of three (3) levels under Section 3E1.1 (Acceptance of Responsibility) of the Sentencing Guidelines. The parties agreed that no other adjustments apply. Michael Ruffatto and the United States stipulated that no down departures apply under Part K of the Sentencing Guidelines and that the defendant's total offense is 21, resulting in a Sentencing Guidelines range of 37-46 months incarceration. In the Plea Agreement, the parties reserved each of their respective rights to argue for a variance from the applicable range of 37-46 months incarceration.

## V. SECTION 3553(a) FACTORS

The Supreme Court has stated: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). The Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

District courts must also consider all of the sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

### A. The Nature of the Offense

The crime involved in this case is undoubtedly very serious.  This crime was not easy or opportunistic; it required planning, hard work and organization.  There is an important public interest at stake in the ability of the Department of Energy, and other departments and agencies of the United States, to rely upon the truthfulness of claims presented to it.   In reliance of the defendant's false and fraudulent claims, the Department of Energy paid NAPG, the defendant's corporation involved in the scheme, claim proceeds in excess of $5,700,000.00.  The defendant's crime was not a crime resulting from a single decision or a momentary impulse.  This was a calculated crime.  In order to perpetuate this criminal activity, multiple discrete acts and decisions were required.  Based on his experience as an attorney and sophisticated business executive, the defendant knew the criminal nature of his conduct.  This is why white-collar crime is so serious.  It is the essence of an intentional crime.

The defendant's conduct here was orchestrated.  It was coordinated and planned.  The defendant was methodical.  Most importantly, the defendant's conduct was driven by greed.

### B. History and Characteristics of the Defendant and the Need to Provide the Defendant with Medical Care

The childhood history of the defendant offers no mitigating explanation for the defendant's serious criminal conduct.  The defendant is an attorney and sophisticated businessman.  He is a graduate of Stanford University.  The defendant controlled the personnel and operations of NAPG.

In this case, the defendant has a criminal history category of I.  The Sentencing Guidelines range of 36-47 months imprisonment adequately takes into account the defendant's criminal history category of I.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense

Congress requires that sentencing courts consider the need for the sentence imposed to reflect the seriousness of the offense.  The instant offense is, without question, very serious.  The defendant's fraudulent conduct involved over $5,700,000.00 in government monies paid to the defendant's corporation in reliance on the defendant's false and fraudulent claims.

The seriousness of Michael Ruffatto's offense requires imprisonment.  A sentence of imprisonment within the Sentencing Guidelines range of 37-46 months will properly reflect the seriousness of the offense.

### D. The Need for the Sentence to Promote Respect for the Law

Promotion of respect for the law is another important goal of sentencing. A sentence of imprisonment within the range of 37-46 months is necessary to promote respect for the law. It will convey to the public and to the defendant that filing false and fraudulent claims to obtain government money is a crime that is taken seriously and one that is not accepted in the Western District of Pennsylvania.

### E. The Need for the Sentence to Provide Just Punishment

A sentence of imprisonment within the Sentencing Guidelines range of 37-46 months is just. Such a sentence would serve to adequately punish the defendant for his methodical, thoughtful, and sophisticated criminal conduct that caused the Department of Energy to pay him in excess of $5,700,000.00 based upon false and fraudulent invoices. A sentence of imprisonment within the range of 37-46 months also fairly takes into consideration the three-level reduction for the defendant's acceptance of responsibility.

### F. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

In white-collar prosecutions, the sentence imposed is important to deter the defendant and the public from committing similar crimes in the future. Given the difficulties of uncovering and prosecuting this type of fraud, the deterrent impact of prison sentences is important to the mission of law enforcement and the financial integrity of government funding programs. A term of incarceration within the Sentencing Guidelines range of 37-46 months will resonate within the community. A sentence of imprisonment with the range of 37-46 months is wholly appropriate here and is necessary to deter similar criminal conduct.

Prison sentences play a vital role in deterring white-collar crime "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal citations omitted).

A sentence within the range of 37-46 months incarceration is needed to adequately deter the defendant from engaging in such conduct in the future.

### G.  The Need for the Sentence Imposed to Protect the Public

A variance below the Sentencing Guidelines range of 37-46 months is not warranted.  In the event that the Court were to sentence the defendant below the 37-46 month range, the defendant could easily believe that he could commit a similar crime again and receive little or no punishment.  A sentence of imprisonment within the range of 37-46 is sufficient but not greater than necessary to fulfill the factors set forth in Section 3553(a).  *United States v. Kluger*, 722 F.3d 549, 567 (3d Cir. 2013).

### H.  The Sentencing Range Established by the Sentencing Guidelines

Another factor Congress requires courts to review when determining a sentence is the Sentencing Guidelines range.  The Sentencing Guidelines range in this case is 37-46 months incarceration.  This range takes into account the defendant's criminal history of I.  A sentence within the Sentencing Guidelines range of 37-46 months incarceration is sufficient but not greater than necessary to achieve the sentencing goals outlined in 18 U.S.C. § 3553(a).

## I. Kinds of Sentences Available

The maximum term of imprisonment in this case is five years, 18 U.S.C. § 287. Based upon a total offense level of 21 and a criminal history category of I, the Sentencing Guidelines range is 37-46 months. The court may impose a term of supervised release of not more than three years under 18 U.S.C. § 3583(b)(2). Since the defendant's offense is a Class D felony, the Sentencing Guidelines range for a term of supervised release is one to three years under Section 5D1.2(a)(2) of the Sentencing Guidelines.

Under 18 U.S.C. § 3561(c)(1), the defendant is eligible for not less than one but not more than five years' probation. Since offense level 21 is in Zone D of the Sentencing Guidelines sentencing table, the defendant is ineligible for probation under the Sentencing Guidelines.

The government recommends a sentence of imprisonment within the Sentencing Guidelines range of 37-46 months. A sentence within the Sentencing Guidelines range of 37-46 months incarceration is sufficient but not greater than necessary to fulfill the sentencing goals outlined in 18 U.S.C. § 3553(a).

A sentence within the Sentencing Guidelines range of 37-46 months will provide adequate deterrence and will discourage others from committing the crime of filing a false claim against the United States. A probationary sentence would not promote respect for the law because it would actually encourage others to engage in similar criminal behavior. Instead, a term of imprisonment within the Sentencing Guidelines range of 37-46 months would best achieve the goals articulated in 18 U.S.C. § 3553(a). A term of supervised release of one to three years following imprisonment should also be imposed by Court in accordance with Section 5D1.2(a)(2) of the Sentencing Guidelines, since the defendant's offense is a Class D offense.

**J. Fine**

The Sentencing Guidelines range for a criminal fine in this case is $7,500.00 - $75,000.00 under §§ 5E1.2(c)(3) and 5E1.2(h)(1). In addition to incarceration, Michael Ruffatto should receive a fine within the guideline range of $7,500.00 - $75,000.00.

**K. Restitution**

Under the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663 et seq., restitution is required in this case. The government and Michael Ruffatto have stipulated in the Plea Agreement that pursuant to 18 U.S.C. §§ 3663A, 3663A and 3664, Michael Ruffatto be ordered to pay restitution to the Department of Energy in the total amount of $5,719,281.92 less $3,000,000.00 previously paid by the defendant, and less any other payments that the defendant makes that are properly credited toward restitution. Subsequent to the execution of the Plea Agreement, the defendant paid an additional $700,000.00. Thus, the total amount of restitution currently due and owing to the Department of Energy by Michael Ruffatto is $2,019,281.92.

## VI. <u>CONCLUSION</u>

WHEREFORE, the United States respectfully requests that the Court impose a sentence of incarceration within the Sentencing Guidelines range of 37-46 months, a term of supervised

release within the Sentencing Guidelines range of one to three years, an order of restitution in the amount of $2,019,281.92 payable to United States Department of Energy and a fine within the Sentencing Guidelines range of $7,500.00 - $75,000.00.  This sentence is sufficient but not greater than necessary to fulfill the sentencing goals outlined in 18 U.S.C. § 3553(a).

                Respectfully Submitted,

                SOO C. SONG
                ACTING UNITED STATES ATTORNEY

                <u>s/ Mary McKeen Houghton</u>
                Assistant U.S. Attorney
                PA ID 31929
                700 Grant Street, Suite 4000
                Pittsburgh, PA  15219
                (412) 894-7370
                mary.houghton@usdoj.gov